NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12061

COMMONWEALTH  vs.  BRYAN M. GRASSIE.


Plymouth.     September 6, 2016. - January 6, 2017.

Present: Gants, C.J., Botsford, Lenk, Hines, Lowy, & Budd, JJ.


Homicide. Assault and Battery by Means of a Dangerous Weapon.
    Evidence, Self-defense. Self-Defense. Practice, Criminal,
    Argument by prosecutor, Verdict, Grand jury proceedings.
    Grand Jury.



Indictments found and returned in the Superior Court
Department on September 21, 2012.

The cases were tried before Frank M. Gaziano, J., and a
renewed motion for a required finding of not guilty was
considered by him.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Kenneth H. Anderson (Greg L. Johnson with him) for the
defendant.
Robert C. Thompson, Assistant District Attorney, for the
Commonwealth.
Argie K. Shapiro, Assistant Attorney General, for the
Attorney General, amicus curiae, submitted a brief.

BOTSFORD, J.  The defendant appeals from his convictions of murder in the second degree and a related charge.  He argues that, based on the evidence presented at trial and the prosecutor's closing argument, his murder conviction should be reversed or reduced to a conviction of manslaughter.  We conclude that there was sufficient evidence to convict the defendant of murder in the second degree and that the prosecutor's closing argument was not improper.  However, for the reasons discussed below, we do not decide whether the defendant is entitled to a reduced verdict.

The defendant argues as well that this court should expand its holding in Commonwealth v. Walczak, 463 Mass. 808 (2012), to require that in all cases where the Commonwealth seeks to indict a person for murder, whether the person is a juvenile (as in Walczak) or an adult (as here), and there is substantial evidence of mitigating circumstances or defenses presented to the grand jury, the grand jury must be instructed on the elements of murder and the significance of mitigating circumstances and defenses.  We conclude that this defendant is not entitled to relief based on the absence of any such instructions.  However, we also believe it is important for the court to gain a better understanding of current grand jury instruction practices before deciding whether the holding of the Walczak case should be expanded in the future.  Accordingly, we

will appoint a committee to study and make recommendations about this question.[1]

Background. 1. Facts. The jury could have found the following. The fatal altercation occurred in the East Wareham section of Wareham outside a high school graduation party hosted by Dylan Burns. The gathering began on the afternoon of July 28, 2012, and extended into the early morning hours of July 29. The two victims, Brendan Mahoney and Brian Mahoney,[2] arrived at the party around 2 or 3 P.M. on July 28 and, like many of the partygoers, were drinking alcohol despite being underage. All told, a "half keg" and two thirty-packs of beer were consumed throughout the day and night. The defendant, Bryan Grassie, arrived at the party after midnight on July 29, appearing intoxicated and acting "confrontational" and "aggressive." The defendant had not been invited to the party, but he knew Burns, the host.

Over the next few hours, the defendant repeatedly confronted others at the party, including the Mahoney brothers, and either discussed fighting or offered to fight them. For example, the defendant at one point told the brothers, "[I]f

---

[1]     We acknowledge the amicus brief submitted by the Attorney General.

[2] For convenience, we will use only first names when referring to the Mahoney brothers individually.

there's a problem right now, we can go outside and take care of it."  During a confrontation, the brothers forced the defendant up against a wall and told him "no one there wanted to fight" and "to leave before he got hurt."  Brendan then removed a cigarette from behind the defendant's ear and threw it in the defendant's face.  Brian spoke with Burns and asked him to get the defendant "the fuck out of here before I [Brian], like, hit him or something."  Eventually, Burns did intervene.  However, the defendant and the Mahoney brothers continued to exchange words about the possibility of fighting at a nearby beach.  As Burns was leading the defendant away from the brothers, Brian reached over Burns's shoulder and pushed the defendant's face away.

Burns was able to coax the defendant outside, although the defendant remained confrontational.  He told Burns, "My problem is with . . . the Mahoney [b]rothers," and said, "[H]ave them come outside and . . . we'll solve it.  We'll take care of it with them."  Once outside, the defendant at first would not leave the front of the house, and yelled at the Mahoneys to come outside and fight him.  When Brian came out, the defendant said, "[L]et's go down to the beach.  We'll fight there," and Brian said, "[A]lright, I'll see you in like [ten] minutes," before going back inside.  The defendant continued to yell about fighting.  After some time outside, however, the defendant began

to walk away from the party. He headed down Priscilla Avenue, in the direction of his home and also the beach; as he walked, he continued shouting insults back toward the party.

The events at the heart of this case occurred shortly thereafter. The trial witnesses essentially agreed that after the defendant began walking away from the party, the Mahoney brothers pursued him down Priscilla Avenue, followed by several others from the party. One witness testified that the defendant was "walking backwards" -- that is, facing the party -- as he left. This witness described the defendant as "turned around" and "waiting" in a "fighting stance" or "in a ready position waiting to fight," with his feet "shoulder width apart" and his hands out of his pockets as the brothers approached. The defendant and the brothers then engaged in physical combat in the shadows beyond a streetlight. A surveillance audio-video system mounted on the outside of a nearby home on Priscilla Avenue captured audio from the fight, as well as some video images from before and after.

The following is apparent from the audio-video recording. Footsteps walking can be heard, and a very shadowy figure (identified by several witnesses as the defendant) can vaguely

be made out, moving down the road away from the party.[3] Over the first twenty seconds of the recording, the defendant can be heard saying, "Follow me, let's go . . . . Follow me, you little pussies. I'll wait there, dude. I'll wait there for you. You guys are fucking bitches, you guys won't come. You fucking pussies. I'll fight you guys like one-on-one. Not even one-on-one. Two-on-one, three-on-one, you fucking little pussies." Over the next three seconds, the defendant says nothing further as he continues to walk down Priscilla Avenue and his shadowy figure moves out of the camera's view. As it does so, the sound of running footsteps becomes audible. Although the video recording does not reveal any visual image of a person or persons, the witnesses at trial essentially agreed that the Mahoney brothers were the first partygoers to run down Priscilla Avenue after the defendant, followed by Burns, James Waitz, and Matthew Ingargiola. Within three seconds of the sound of running footsteps, a series of thuds or crashes is heard, along with additional running footsteps. Approximately ten seconds elapse between the first crash and the sound of someone's voice saying, "He's got a knife," followed immediately

---

[3] As mentioned, one witness testified that the defendant was walking backward as he left the party. Another witness testified that -- at least once the Mahoney brothers began their pursuit -- the defendant started to run away from them. It is impossible to tell from the recording alone which direction the defendant was facing at any given time.

by a scream. Six seconds later, someone says, "Call the ambulance." About five seconds after that, a video image shows Brendan limping quickly away from the fight, back toward the site of the party, accompanied by Brian and two others running beside him, identified at trial as Burns and Waitz.

Each Mahoney brother had been stabbed several times. Brendan suffered five stab wounds and one incised wound. One of the stab wounds was to the abdomen, identified by the medical examiner as the only wound that could have caused his death. The remaining wounds were to Brendan's legs or buttocks. Following surgical intervention, Brendan died on July 31, 2012. Brian suffered two stab wounds to his abdomen and side, and others to the buttocks; the injuries required surgical repair.

Although the weapon used in the stabbings was not recovered, there was testimony that the defendant had exhibited a folding knife, in a nonthreatening manner, to one person at Burns's party and to a different person at an earlier party held the same night. The Commonwealth introduced in evidence two knives that were described by those two individuals as looking similar to the knife the defendant had shown to them. Each of the model knives has a blade approximately three and one-half inches long and a handle approximately four and one-half inches long. The model knives can be opened with one hand by pressing certain areas of the handle.

2.  Procedural history.  A Plymouth County grand jury indicted the defendant for murder in the first degree (Brendan), armed assault with intent to murder (Brian), and assault and battery by means of a dangerous weapon (Brian).  The defendant moved to dismiss the indictments because the Commonwealth had failed to instruct the grand jury on the elements of murder in the first degree, murder in the second degree, and voluntary manslaughter, and on mitigating circumstances and defenses.  The motion was denied.  The defendant sought review before a single justice in this court pursuant to G. L. c. 211, § 3.  The single justice denied relief.

The defendant thereafter was tried before a jury.  At the close of the Commonwealth's case and at the close of all the evidence, the defendant moved for a required finding of not guilty insofar as the indictments alleged murder (in both degrees) and armed assault with intent to murder.  The trial judge denied the motions.  With respect to the murder indictment, the judge instructed the jury on murder in the first degree (on the theories of deliberate premeditation and extreme atrocity or cruelty); murder in the second degree; voluntary manslaughter; self-defense; and the mitigating circumstances of (1) heat of passion on reasonable provocation, (2) heat of passion induced by sudden combat, and (3) the use of excessive force in self-defense.  The jury found the defendant guilty of

murder in the second degree and assault and battery by means of a dangerous weapon; the defendant was found not guilty of armed assault with intent to murder and the lesser included offense of armed assault with intent to kill.

Following the verdicts, the defendant renewed his motion under Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), for a required finding of not guilty on the charge of murder. In the alternative, he moved under the same rule for a reduction in the verdict of murder in the second degree to manslaughter, or for a new trial. The trial judge denied all three aspects of the motion. The defendant appealed from his convictions to the Appeals Court, and we transferred the case to this court on our own motion.

Discussion. 1. Motion for a required finding of not guilty. The defendant first argues that the judge erred in denying his motion for a required finding of not guilty insofar as the indictments alleged murder. Essentially, he argues that the Commonwealth failed to meet its burden of proving beyond a reasonable doubt the absence of mitigating circumstances -- to wit, the absence of heat of passion induced by reasonable

provocation or sudden combat,[4] and the absence of excessive force in self-defense.  We disagree.

When reviewing a motion for a required finding of not guilty, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  The evidence and the inferences drawn therefrom must be of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt.  Latimore, supra at 676, citing Commonwealth v. Cooper, 264 Mass. 368, 373 (1928).  More than slight evidence must support each essential element, and "a conviction may not 'rest upon the piling of inference upon inference or conjecture and speculation.'"  Commonwealth v. Reaves, 434 Mass. 383, 390 (2001), quoting Commonwealth v. Mandile, 403 Mass. 93, 94 (1988).

Where, as in this case, there is evidence supporting the proposition that in stabbing Brian, the defendant acted out of heat of passion, whether induced by reasonable provocation or

---

[4] There is substantial overlap, at least in this case, between the theories of heat of passion induced by reasonable provocation and heat of passion induced by sudden combat.  We address both theories infra.

sudden combat, the jury are instructed to consider whether a reasonable person, either as a result of reasonable provocation or induced by sudden combat, would be "provoked to act out of emotion rather than reasoned reflection." Model Jury Instructions on Homicide 67-68 (2013).[5] If the jury make such a finding or, more specifically, find that the Commonwealth has failed to prove beyond a reasonable doubt that the defendant was not so provoked, they cannot return a verdict of murder, whether of first or second degree. See id. Because the jury in this case returned a verdict of murder in the second degree, our task is to determine whether there was sufficient evidence to allow them to find the Commonwealth did prove beyond a reasonable doubt the absence of heat of passion resulting from either reasonable provocation or sudden combat. See, e.g., Commonwealth v. Acevedo, 427 Mass. 714, 715-716 (1998), citing Commonwealth v. Boucher, 403 Mass. 659, 661-662 (1989) (because malice and adequate provocation are "mutually exclusive," Commonwealth must prove beyond reasonable doubt absence of provocation in order to sustain murder conviction).

With respect to heat of passion induced by reasonable provocation, the crucial inquiry is whether an action by the victim or victims in relation to the defendant would have roused

---

[5] The jury were so instructed in the present case.

in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse the defendant's capacity for reflection or restraint, and whether it actually did produce such a state of mind in the defendant. Commonwealth v. Burgess, 450 Mass. 422, 439 (2008), citing Commonwealth v. Walden, 380 Mass. 724, 728 (1980). The jury must find a causal connection between the provocation, the heat of passion, and the killing. Burgess, supra at 438, citing Commonwealth v. Garabedian, 399 Mass. 304, 313 (1987). The jury here could have credited the following evidence: the defendant was walking backward down Priscilla Avenue, beckoning people to fight him "three-on-one," with the knowledge that he had a knife in his pocket and no indication that anyone else was carrying a weapon. Seconds later, the brothers came after him and Brendan landed one punch. Virtually immediately thereafter, the brothers were stabbed. If the jury believed these facts, as they were entitled to do, they could rationally infer that the defendant's decision to use deadly force reflected a previously formed intention to do so, not an impulsive action resulting from a state of passion induced by provocation supplied by Brendan's opening punch. If the jury found that the defendant's intent to stab preexisted Brendan's landing that first punch, there would be no causal connection between the punch and the defendant's

state of mind -- and thus no mitigation due to reasonable provocation. See Burgess, supra.

We reach the same conclusion with respect to sudden combat. The mitigating circumstance of sudden combat contemplates a scenario in which "two meet, not intending to quarrel, and angry words suddenly arise, and a conflict springs up in which blows are given on both sides, without much regard to who is the assailant." Commonwealth v. Rodriquez, 461 Mass. 100, 107 (2011), quoting Commonwealth v. Webster, 5 Cush. 295, 308 (1850). "[I]f no unfair advantage is taken in the outset, and the occasion is not sought for the purpose of gratifying malice, and one seizes a weapon and strikes a deadly blow, it is regarded as homicide in heat of blood." Rodriquez, supra. The jury could reasonably infer that the defendant uttered the words, "I'll fight you guys like one-on-one. Not even one-on-one. Two-on-one, three-on-one," because he had already formed the intent to stab anyone who accepted his invitation to fight. In other words, this evidence at least permits (although certainly does not require) an inference that the defendant solicited a fight with the Mahoney brothers as a pretext for his use of deadly force. See Commonwealth v. Fitzgerald, 380 Mass. 840, 849-850 (1980) (sufficient evidence to warrant jury's finding of malice and returning verdict of murder in second degree where defendant, after professing intention to injure

victims, intentionally used deadly weapon on them).  Such a finding would defeat any entitlement to mitigation based on heat of passion induced by sudden combat.

The issue of excessive force used in self-defense is much closer.  Because the actual physical confrontation that ended with Brendan's death raised an issue whether the defendant used a knife -- deadly force[6] -- in proper self-defense, the Commonwealth was required to prove beyond a reasonable doubt that the defendant did not engage in the proper use of self-defense.  See Commonwealth v. Glacken, 451 Mass. 163, 166-167 (2008).  As relevant here, our cases and the model jury instructions, to which the trial judge scrupulously adhered and which neither party challenges on appeal, set out alternative ways for the Commonwealth to carry this burden.  See Model Jury Instructions on Homicide, supra at 20-21.  In a deadly force self-defense case, the Commonwealth may establish the absence of proper use of self-defense by proving beyond a reasonable doubt at least one of the following propositions:  (1) the defendant did not actually believe that he was in immediate danger of

---

[6] The defendant correctly does not dispute that his use of a knife constituted deadly force.  See, e.g., Commonwealth v. Pring-Wilson, 448 Mass. 718, 733 (2007), citing Commonwealth v. Toon, 55 Mass. App. Ct. 642, 644 n.3 (2002) (stabbing victim with knife constitutes use of deadly force); Commonwealth v. Albert, 391 Mass. 853, 860-861 (1984) (jury were entitled to infer malice from intentional use of deadly force [knife] to stab victim).

death or serious bodily harm from which he could save himself only by using deadly force; (2) a reasonable person in the defendant's position would not reasonably have believed that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (3) the defendant did not use or attempt to use all proper and reasonable means in the circumstances to avoid physical combat before resorting to the use of deadly force; or (4) the defendant used more force than was reasonably necessary in all the circumstances.[7]  See id.  See also Glacken, supra at 167.  If the Commonwealth fails to prove the first, second, or third proposition, but does prove the fourth proposition -- that is, if the only way the Commonwealth proves that the defendant did not act in proper self-defense is by proving that the defendant used excessive force -- then the jury must return a verdict of not guilty of murder but, if the other required elements of murder are proved, must find the defendant guilty of voluntary

---

[7] The Model Jury Instructions on Homicide 21 (2013) also provide a fifth option that may be applicable where there is evidence that the defendant was the initial aggressor.  The defendant agreed with the trial judge's decision that including this fifth option was not warranted in this case, because as a general matter, words alone cannot make one into a first aggressor, and did not do so with respect to this defendant.  We agree as well.  See Commonwealth v. Harris, 464 Mass. 425, 435-436 & n.12 (2013) (generally "conduct involving only the use of nonthreatening words will not be sufficient to qualify a defendant as a first aggressor").

manslaughter.  See Model Jury Instructions on Homicide, supra at 71.  See Glacken, supra, and cases cited.  See also Commonwealth v. Santos, 454 Mass. 770, 775 (2009).

The trial evidence here would permit a rational jury to conclude that the Commonwealth had proved beyond a reasonable doubt that the defendant did not act in the proper exercise of self-defense.  In particular, the jury could have credited the surveillance video recording depicting the defendant offering to fight people from the party "two-on-one" or "three-on-one"; that, as one witness testified, the defendant was "walking backwards" and shouting back toward the party as he departed down Priscilla Avenue; and that, as the same witness stated, the defendant was "turned around" and "waiting" in a "fighting stance" with his hands out of his pockets as the brothers approached.[8]  This evidence would permit the jury to conclude that the defendant had invited the fight and was waiting for it rather than trying to use all reasonable options to avoid it. That the jury reasonably could so conclude means that the Commonwealth could prove beyond a reasonable doubt the third

---

[8] The witness who testified to these observations, James Waitz, also testified that he saw nothing in the defendant's hands at this exact moment, but the jury were not required to accept that testimony.  There was no question that it was very dark where the fight took place, and there was evidence that the knife in the defendant's possession had a black blade with a black handle.

proposition listed in the previous paragraph, namely, that "the defendant had not availed himself of all proper means to avoid physical combat before resorting to the use of deadly force." Glacken, 451 Mass. at 167.  See Santos, 454 Mass. at 773; Commonwealth v. Bertrand, 385 Mass. 356, 362 (1982) (defendant "did not attempt to avoid a fight" with victim, but rather "anticipated a fight that evening" and remained on scene until after participating in fight).

In addition, the jury rationally could have concluded that the defendant sought out a fight in which he was outnumbered precisely because he knew that he could use, and intended to use, the knife in his pocket against anyone who accepted his invitation to fight.  Such a mental state is inconsistent with the defendant harboring a subjective fear of serious bodily injury from which he could only save himself by using deadly force.  See Santos, supra ("A person using a dangerous weapon [or deadly force] in self-defense must also have actually believed that he was in imminent danger of serious harm or death").  Again, because the jury permissibly could make such findings, it follows that the Commonwealth could carry its burden of proving beyond a reasonable doubt that the defendant did not have an actual belief that he could not protect himself absent the use of deadly force -- i.e., the second proposition listed previously.  Cf. Commonwealth v. Torres, 420 Mass. 479,

492-493 (1995) (defendant not entitled to self-defense instruction absent evidence of reasonable and actual belief that he or another was in imminent danger of death of serious bodily harm).

If the jury rationally could conclude that the Commonwealth had proved the defendant was not entitled to use deadly force in self-defense, there would be no basis for a finding that the defendant had used excessive force in self-defense. See Santos, 454 Mass. at 775 ("The jury cannot reach the question of excessive force in self-defense unless they decide that the defendant has exercised his right of self-defense in the first place"); Commonwealth v. Walker, 443 Mass. 213, 218 (2005) ("a voluntary manslaughter verdict based on excessive force in self-defense would have been precluded if the Commonwealth proved that the defendant was not entitled to use deadly force"). See also Commonwealth v. Roberts, 433 Mass. 45, 57 (2000) (excessive force instruction unavailable absent evidence that defendant reasonably believed he was in imminent danger of death or serious bodily injury and used all reasonable means of avoiding combat); Commonwealth v. Berry, 431 Mass. 326, 335 (2000) (defendant did not take advantage of every opportunity to avoid combat when "at least at some point he had adequate means of escape").

Of course, this was no by means the only conclusion available to the jury. As the defendant correctly points out, there was other evidence that could have led the jury to embrace any of his theories of mitigation. The defendant was just eighteen years old and appeared intoxicated before the fight began around 3:30 in the morning. Brendan's punch knocked the defendant to the ground or into a fence, and the defendant at that point was facing what very well may have looked like a group of at least five attackers (Brendan, Brian, Burns, Waitz, and Ingargiola). The jury had ample evidence from which to conclude that the defendant used deadly force in response to reasonable provocation or that he had a right to defend himself but used excessive force in doing so. However, that state of affairs merely entitled the defendant to jury instructions on mitigation and self-defense -- which he received in the words of the model jury instructions. Compare Boucher, 403 Mass. at 661-662 (error when instructions failed to inform jury that malice and adequate provocation are "mutually exclusive"); Commonwealth v. Kendrick, 351 Mass. 203, 212-213 (1966) (error where instructions foreclosed jury from finding manslaughter based on excessive force used in self-defense).

Once the jury were properly instructed on mitigating circumstances and self-defense -- and no one argues they were not -- it was for them to decide whether the defendant properly

used deadly force in the heat of passion or in self-defense -- or, alternatively, if he used deadly force because of a preexisting intent to stab anyone who accepted his invitation to fight.  See Daniels v. Commonwealth, 455 Mass. 1009, 1009-1010 (2009) (defendant's "claim that the Commonwealth failed to disprove that she acted in self-defense beyond a reasonable doubt fails because, while the evidence at her trial, viewed most favorably to her, entitled her to a self-defense instruction, the jury were not required to credit her version of the altercation"); Hartfield v. Commonwealth, 443 Mass. 1022, 1022 (2005) ("The flaw in [the defendant's] argument is that the jury were not required to credit the evidence supporting her contention that she acted on provocation or in self-defense. The evidence is examined in the light most favorable to the defendant in determining whether instructions on provocation or self-defense are warranted, . . . but that is not to say that the jury must believe that evidence -- or that a judge or an appellate court, in assessing the sufficiency of the Commonwealth's evidence to support a conviction of murder, must assume that the jury would believe that evidence" [citation omitted]).  Because there was legally sufficient evidence to support the jury's verdict of murder in the second degree, the defendant's motions for a required finding of not guilty insofar as the indictments alleged murder were properly denied.

2.  Prosecutor's closing argument.  The defendant also argues that we should vacate his convictions because the prosecutor improperly shifted the burden of proof by discussing the defendant's "claim" of self-defense during her closing argument.  We disagree.  In context, the prosecutor's comments "do not appear to represent an effort to place a burden on the defendant."  Commonwealth v. Williams, 450 Mass. 879, 889 (2008).  To the contrary, they were merely "an attempt to meet the Commonwealth's burden of disproving self-defense."  Id.  The argument was not improper.

3.  Motion to reduce the verdict from murder in the second degree to manslaughter.  The defendant contests the judge's denial of his motion under the second sentence of Mass. R. Crim. P. 25 (b) (2) to reduce the jury's verdict to manslaughter.[9]  He argues that the weight of the evidence so strongly supports the presence of mitigating circumstances -- that is, excessive force in self-defense and heat of passion -- that the judge's denial of his motion was an abuse of discretion.  For the reasons discussed below, we do not decide this issue at the present time.

_____

[9] The second sentence of Mass. R. Crim. P. 25 (b) (2) provides:  "If a verdict of guilty is returned, the judge may on motion set aside the verdict and order a new trial, or order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint."

Under rule 25 (b) (2), a trial judge has broad authority to reduce a jury's verdict, despite the presence of legally sufficient evidence to support it. Commonwealth v. Sokphann Chhim, 447 Mass. 370, 381 (2006). "A judge's discretion to reduce a verdict pursuant to rule 25 (b) (2) is appropriately exercised where the weight of the evidence in the case, although technically sufficient to support the jury's verdict, points to a lesser crime." Commonwealth v. Rolon, 438 Mass. 808, 821 (2003). In exercising his or her rule 25 (b) (2) powers, the trial judge should be guided by the same considerations that have guided this court in the exercise of its power and duties under G. L. c. 278, § 33E, to reduce a verdict. Commonwealth v. Gaulden, 383 Mass. 543, 555 (1981).

The role of this court in reviewing a trial judge's ruling on a motion to reduce the verdict is "not to decide whether we would have acted as the trial judge did." Sokphann Chhim, 447 Mass. at 381. Instead, we decide only whether the judge abused his or her discretion or committed an error of law.[10] Id.,

---

[10] We are cognizant of the fact that a narrower scope of review applies to our analysis of second-degree murder convictions compared with our review of first-degree murder convictions under G. L. c. 278, § 33E, given that § 33E no longer provides plenary review by this court in cases where a defendant is convicted of murder in the second degree. See Commonwealth v. Maillet, 400 Mass. 572, 579 n.9 (1987) (comparing St. 1962, c. 453, which required review by this court under § 33E where defendant indicted for murder in first degree

citing Gaulden, 383 Mass. at 557. Abuse of discretion arises where "the judge made 'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

That said, there must be some mechanism by which an appellate court can meaningfully assess whether a judge acted appropriately in granting or denying rule 25 (b) (2) relief. For instance, if a judge grants a motion to reduce a verdict, the expectation is that the judge will explain his or her reasoning in a written ruling or an oral explanation on the record. See Commonwealth v. Woodward, 427 Mass. 659, 669 (1998) ("We do expect a judge to state the reasons for a reduction in verdict" under rule 25 [b] [2]); Gaulden, 383 Mass. at 555-556 (noting that judge who reduces verdict under rule 25 [b] [2] should state reasons for doing so). This allows the appellate court to test the judge's reasoning for abuse of discretion. We

---

is convicted of murder in either first or second degree, with St. 1979, c. 346, § 2, which does not require review where defendant, so indicted, is convicted of murder in second degree). See also Commonwealth v. Gaulden, 383 Mass. 543, 553-554 (1981) (similar). One possible explanation for this disparity in treatment of the two degrees of murder is that those convicted of murder in the first degree are sentenced to life without the possibility of parole, whereas those convicted of murder in the second degree eventually become eligible for parole. See G. L. c. 265, § 2; G. L. c. 279, § 24.

have never required such a statement of reasons when, as here, the judge <u>denies</u> a motion to reduce and leaves the jury's verdict intact. Even so, the task of the appellate court is the same: to determine whether "the judge made 'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (citation omitted). <u>L.L.</u>, 470 Mass. at 185 n.27.

In this case, the trial judge did not state his reasons for denying the defendant's motion to reduce the verdict.[11] Without a statement of reasons, we are unable to determine whether the decision not to reduce the verdict was an abuse of discretion.[12]

---

[11] The judge's ruling consisted of two handwritten lines: "The motion is denied. The court declines to disturb the jury's verdict."

[12] As just stated, we have never required a detailed explanation as a sine qua non of denying a motion to reduce a verdict, nor do we intend to do so now. That said, even a brief explanation of the judge's rationale for denying a motion under rule 25 (b) (2) assists the understanding of the parties, the public, and the appellate courts of the judge's decision, and especially in close or difficult cases, we urge judges to provide a statement articulating with some specificity their reasons for denying a rule 25 (b) (2) motion. See <u>L.L.</u> v. <u>Commonwealth</u>, 470 Mass. 169, 182-183 (2014), quoting <u>Long</u> v. <u>Wickett</u>, 50 Mass. App. Ct. 380, 402 (2000) (even where judge has "broad discretion," it is "essential . . . that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law").

The usual remedy for this predicament -- where the record is inadequate for an appellate court to test a judge's rule 25 (b) (2) ruling for abuse of discretion -- would be to remand to the trial judge, who had a firsthand view of the evidence, for findings or an explanation of reasons.[13]  See Woodward, 427 Mass. at 669; Gaulden, 383 Mass. at 555-556.  However, such a remedy would be ineffectual in the circumstances of this case because Justice Gaziano, who was the trial judge, has since become a member of this court.  See Gaulden, supra at 547

_____

[13] In other contexts, although not perfectly analogous to this case, we have remanded when it appeared necessary or at least desirable for additional explication from the trial or motion judge.  See Commonwealth v. Sylvain, 466 Mass. 422, 439 (2013), S.C., 473 Mass. 832 (2016) (remanding for findings related to defendant's ineffective assistance of counsel claim); Commonwealth v. Greineder, 458 Mass. 207, 219-220 (2010), S.C., 464 Mass. 580 (2013) (discussing result after remanding for factual findings on defendant's claim of closed court room during jury empanelment); Commonwealth v. Isaiah I., 448 Mass. 334, 338 (2007), S.C., 450 Mass. 818 (2008) (remanding for further factual findings in context of motion to suppress); Commonwealth v. Hernandez, 421 Mass. 272, 278-280 (1995) (vacating dismissal of criminal complaint and remanding for determination on issue of prejudice from prosecutor's conduct); Commonwealth v. Caso, 377 Mass. 236, 237, 241-242, 244 (1979) (remanding for further findings on issue of voluntariness of witness's statements).  See also Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 849-851 (2009) (remanding for individualized assessment regarding reasonable accommodation for public housing tenant); Weber v. Community Teamwork, Inc., 434 Mass. 761, 775-776 (2001) (remanding employment discrimination case for finding on elements of animus and causation); Rosenberg v. Merida, 428 Mass. 182, 185 (1998) (remanding because judge made no findings concerning amount of child support obligation, which left appellate court unable to determine whether he followed correct approach).

("Because the judge has retired, we cannot readily remand the case for him to make findings at this time").

Nonetheless, this court does have the power to transfer cases, or parts of cases, from a lower court to this court. See G. L. c. 211, § 4A, third par.[14] Thus, given the unusual posture of this case, pursuant to § 4A, we will exercise jurisdiction over the motion to reduce the verdict -- a component of the case that, ordinarily, we would simply remand to the trial judge.[15] Having jurisdiction over that part of the case, we will transfer it to the county court to permit Justice Gaziano, acting as single justice, to review anew the defendant's motion to reduce the verdict. In conducting that review, the single justice may reconsider his prior ruling and reach a different result or he may not, but his resolution should be accompanied by a statement explaining the reasons for his decision. Once the single justice has done so, he should report the case to the full court.

---

[14] The third paragraph of G. L. c. 211, § 4A, provides:

"The supreme judicial court may also direct any cause or matter to be transferred from a lower court to it in whole or in part for further action or directions, and in case of partial transfer may issue such orders or directions in regards to the part of such cause or matter not so transferred as justice may require."

[15] This exercise of jurisdiction requires us to remand the case to the Superior Court and then transfer it back to this court pursuant to our powers under G. L. c. 211, § 4A.

We add the following, in light of the close correspondence between the review conducted by a trial judge on a motion to reduce the verdict and this court's consideration whether to reduce a verdict pursuant to § 33E.[16]  See Gaulden, 383 Mass. at 555-556.  In performing our duty under § 33E, we have occasionally reduced verdicts, or approved of reduced verdicts, based largely on "the particulars of the fight that led to the victim's death."  Commonwealth v. Vargas, 475 Mass. 338, 365 (2016).  In several cases, those "particulars" bear striking factual similarities to this case.  See, e.g., Commonwealth v. Keough, 385 Mass. 314, 320-321 (1982).[17]  See also Commonwealth

---

[16] Reviewing convictions of murder in the second degree is familiar territory for this court, albeit more in the past than the present.  Before 1979, the court's review under § 33E extended to cases, like this one, that involved a conviction of murder in the second degree based on an indictment charging murder in the first degree.  G. L. c. 278, § 33E, as amended through St. 1974, c. 457.  See Gaulden, 383 Mass. at 553.  In 1979, § 33E was amended to limit this court's review function under that statute to convictions of murder in the first degree; under the rules of criminal procedure, trial judges in all criminal cases have "a power to enter a finding of a lesser degree of guilt in the same manner that this court has had such a power under . . . § 33E, on the appeal of a capital case."  Id.

[17] In Commonwealth v. Keough, 385 Mass. 314 (1982), this court affirmed the trial judge's decision to reduce a verdict of murder in the second degree to manslaughter on facts that bear a substantial similarity to the facts here.  We stated:

     "We agree with the judge's statement that '[t]his is a tragic case in which a minor controversy between strangers exploded into the killing of a human being.'  A number of

v. Jones, 366 Mass. 805, 806, 809 (1975) (reducing verdict from murder in second degree to manslaughter where victim "struck the defendant a heavy blow on the jaw which sent him reeling backward several steps" before defendant stabbed victim in chest with fishing knife defendant carried with him every day); Commonwealth v. Kinney, 361 Mass. 709, 710-713 (1972) (reducing two convictions of murder in second degree to manslaughter where defendant was set upon by group of women, struck in head, and dragged into stairwell before firing two shots, killing one woman and one child); Commonwealth v. Ransom, 358 Mass. 580, 582-583 (1971) (reducing conviction of murder in second degree to manslaughter where defendant stabbed victim after victim first attacked defendant and then pursued defendant into alley

---

significant facts are undisputed. The judgment of the persons involved appears to have been affected by the consumption of alcohol. The defendant and the victim had had no previous confrontation. The defendant had the murder weapon in his possession. He did not leave to obtain it and return to confront the victim. At the crucial moment, the victim sought out the defendant for confrontation. There were four persons in the victim's group and only two in the defendant's. The entire incident was characterized by senseless conduct by both groups. There was no evidence of the defendant's prior criminality.

"Although each case depends on a consideration of its particular circumstances, the judge's conclusion here fits into the pattern of those cases involving senseless encounters in which, under G. L. c. 278, § 33E, we have ordered the entry of a finding of a lesser degree of guilt."

Id. at 320-321, and cases cited.

and up to fence where defendant could run no further).  It also bears noting that some § 33E cases have given weight to factors such as age and intoxication, both of which were also at issue in this case.  See Commonwealth v. McDermott, 393 Mass. 451, 460-461 (1984) (defendant was seventeen years old, and had drug and alcohol problems); Ransom, supra at 583 (alcohol and drugs may have played role in killing).  See also Commonwealth v. Colleran, 452 Mass. 417, 431-432 (2008) (collecting cases that discuss factors that have been relevant to reducing murder verdicts under § 33E).  Because these considerations have informed this court's § 33E analysis, they should also provide a framework for the judge to explain his reasons in resolving the rule 25 (b) (2) question.

4.  Grand jury instructions.  Finally, the defendant asks that we expand the court's holding in Commonwealth v. Walczak, 463 Mass. 808 (2012), to apply whether the accused is a juvenile or an adult.  Under such a rule, the defendant suggests, the grand jury in this case should have received legal instructions on mitigating circumstances and self-defense.  He argues that because no such instructions were given, the integrity of the grand jury was impaired, and the indictment must be dismissed.

In the Walczak case, four Justices agreed that "where the Commonwealth seeks to indict a juvenile for murder and where there is substantial evidence of mitigating circumstances or

defenses (other than lack of criminal responsibility) presented to the grand jury, the prosecutor shall instruct the grand jury on the elements of murder and on the significance of the mitigating circumstances and defenses." Walczak, 463 Mass. at 810 (per curiam). That holding reflected the common ground between two concurring opinions. Justice Lenk, noting that "juveniles charged with murder are uniquely treated as adults for all purposes by virtue of the grand jury's decision to indict," advocated a rule requiring that in any presentment in which the Commonwealth seeks to indict a juvenile for murder the grand jury be instructed on elements of the crime, as well as any defenses or mitigating circumstances raised by the evidence. See id. at 832-833 (Lenk, J., concurring). Then Justice Gants, in an opinion joined by two other Justices, proposed a slightly different rule. He suggested that grand juries should receive legal instructions on murder in the second degree and mitigating circumstances when the prosecutor seeks an indictment for murder despite "evidence of mitigating circumstances that is so substantial that concealing it would impair the integrity of the grand jury," regardless of whether the person accused is a juvenile or an adult. Id. at 837 (Gants, J., concurring).[18]

---

[18] Justice Spina, joined by two Justices, concurred in part and dissented in part. He believed there should be no change to then-existing law regarding instructions to grand juries. See

The holding of the <u>Walczak</u> case, by its own terms, does not help the defendant here.  For one, the rule agreed upon in <u>Walczak</u> does not require additional instructions to be provided to the grand jury in cases, like this one, involving accused persons who are adults.  <u>Id</u>. at 810.  Moreover, as the defendant acknowledges, even if the <u>Walczak</u> case had applied to adults, that case was decided nearly three months after the indictments issued in the present case, and we stated in <u>Walczak</u> that other than the defendant then before the court, the rule would apply only to "future cases."  <u>Id</u>.  Finally, the <u>Walczak</u> case came to this court in a very different posture from this one -- an appeal from the dismissal of an indictment, not an appeal from a conviction following a full jury trial.  See <u>id</u>. at 809.

Because this case does not require us to decide it, we leave to another time the question whether to expand the holding of the <u>Walczak</u> case to apply to adults.  Meanwhile, we will convene a committee to assist us in gaining a better understanding of current practices employed by the various district attorneys and the Attorney General before considering an extension of the rule adopted in the <u>Walczak</u> case to similar

---

<u>Commonwealth</u> v. <u>Walczak</u>, 463 Mass. 808, 844 (2012) (Spina, J., concurring in part and dissenting in part).

types of grand jury proceedings involving adults.[19] Cf. Commonwealth v. Walker, 460 Mass. 590, 604 n.16 (2011) (announcing that study committee would convene regarding eyewitness identification procedures and related model jury instructions).[20] Independent of the work of that committee, however, we decide today that, following the issuance of the rescript in this case, the entire grand jury proceeding -- with the exception of the grand jury's own deliberations -- is to be recorded in a manner that permits reproduction and transcription. This shall include any legal instructions provided to the grand jury by a judge or a prosecutor in connection with the proceeding, as well as a record of all those present during the proceeding.[21]

---

[19] By "similar types of grand jury proceedings," we mean grand jury proceedings in which the Commonwealth seeks an indictment for murder and in which there is evidence presented of mitigating circumstances or defenses (other than lack of criminal responsibility) sufficiently strong that the integrity of the grand jury would have been impaired if it were withheld, and the subject of the investigation is an adult. See Walczak, 463 Mass. at 810 (per curiam), 837 (Gants, J., concurring).

[20] We will ask the committee to report on the range of practices employed by the various district attorneys' offices as well as the office of the Attorney General with respect to grand jury presentments; the reasons supporting the different practices; the substance of the instructions that grand juries receive from those district attorneys who currently provide them; and any recommended best practices.

[21] The Attorney General indicates that, in general, only the judge's instructions at empanelment of the grand jury are

Conclusion.  The case is transferred to the Supreme
Judicial Court for Suffolk County for further proceedings
consistent with this opinion.

So ordered.

---

recorded, whereas a prosecutor's subsequent instructions are not.  It is this practice we seek to change by requiring that the entire grand jury proceeding, including all instructions by either a judge or a prosecutor, be placed on the record.  We disagree with the Attorney General's suggestion that such a practice may jeopardize the secrecy of the grand jury, because grand jury minutes are already required to be made available to the parties.  See Mass. R. Crim. P. 14 (a) (1) (A) (ii), as amended, 444 Mass. 1501 (2005).

LOWY, J. (concurring).  I agree that the evidence supports a verdict of murder in the second degree and that the prosecutor's closing argument was not improper.  I also agree with the approach of transferring the portion of the case concerning the denial of the defendant's motion to reduce the verdict to the county court for review by Justice Gaziano, acting as single justice.  I write separately because I believe that convening a study group "to assist us in gaining a better understanding of current practices employed by the various district attorneys and the Attorney General before considering an extension of the rule in the Walczak case to similar types of grand jury proceedings involving adults" is unnecessary and imprudent.  I believe it is unnecessary for the reasons stated in Justice Spina's opinion in Commonwealth v. Walczak, 463 Mass 808, 844-856 (2012) (Spina, J., concurring in part and dissenting in part).

I believe extending the Walczak protocol to adult murder cases is imprudent for a number of reasons.  First and foremost, while the grand jury is an arm of the court and this court's superintendence power reaches its proceedings, the manner of presentation of evidence to the grand jury rests with the executive branch, absent impairment of the integrity of the grand jury.  Second, should the court intrude into grand jury proceedings in murder prosecutions, why should it not do so in

armed assault with intent to murder cases when there is evidence of mitigation, or in indecent assault and battery cases when there is evidence that the touching was accidental or consensual?  Third, will the Commonwealth now have to anticipate evidence of mitigation through the eyes of defense counsel or proactively investigate evidence of mitigation at the earliest stages of a prosecution?  Finally, adopting such a rule will add a plethora of new motions and appeals relative to the quality or absence of the Commonwealth's instructions.  Trial judges are not infrequently reversed for failing to give a manslaughter instruction or because of error in instructions inadvertently shifting the burden of proof of mitigation to the defendant.  Should Walczak be extended to adult murder cases, countless issues will be raised concerning the need for and quality of such instructions.  While these issues are of paramount importance at trial, a grand jury proceeding is not a trial.  For the past 236 years the grand jury has been an investigatory and accusatory body in this Commonwealth.  Commonwealth v. Moran, 453 Mass. 880, 884 n.7 (2009).  The convening of a study group will be but a first step in the erosion of that vital and historic function.