NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-515

COMMONWEALTH

vs.

RONYVAN V. GONCALVES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this direct appeal from convictions, after a jury trial, of various crimes[1] stemming from events at a car dealership in

---

[1] On September 8, 2009, the defendant was charged with three counts of breaking and entering a vehicle in the nighttime with an intent to commit a felony, G. L. c. 266, § 16, two counts of malicious destruction of property over $250, G. L. c. 266, § 127, two counts of assault and battery on a police officer, G. L. c. 265, § 13D, one count of mistreating or interfering with a police dog, G. L. c. 272, § 77A, one count of attempt to commit a crime (to wit, larceny over $250), G. L. c. 274, § 6, one count of larceny under $250, G. L. c. 266, § 30 (1), one count of possession of burglarious instruments, G. L. c. 266, § 49, one count of resisting arrest, G. L. c. 268, § 32B, one count of conspiracy, G. L. c. 274, § 7, and one count of receiving a stolen motor vehicle, G. L. c. 266, § 28 (a).  He pleaded guilty to the charges in November 2009, but subsequently filed a motion to vacate his plea and for new trial, which was allowed on February 4, 2018.  The jury trial from which the current appeal stems occurred in August 2019.  The jury found the defendant guilty of two counts of breaking and entering a vehicle in the nighttime with an intent to commit a felony, two counts of malicious destruction of property over $250, one count of assault and battery on a police officer, mistreating or

the early morning hours of September 5, 2009, the defendant argues that the evidence was insufficient to support the convictions, and that the prosecutor argued facts not in evidence during closing argument.  With the exception of the conviction of assault and battery on a police officer, we affirm.[2]

Background.  We recite the Commonwealth's evidence, together with the reasonable inferences to be drawn from it, in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  Responding to a call at 2:16 A.M. on September 5, 2009, a uniformed police officer went to a car dealership where he saw the defendant standing in between rows of cars parked in the dealership's lot.  The officer heard a loud, metallic banging, and then saw the defendant throw something away, producing a similar metallic sound.  Those items turned out to be lug nuts.  The windows of two vehicles near where the defendant had been standing were "smashed out," and one vehicle had been jacked up with "a heavy-

---

interfering with a police dog, attempt to commit a crime, larceny under $250, and resisting arrest.

[2] The Commonwealth concedes, and we agree, that the evidence was insufficient to support the charge of assault and battery on Officer Steven Somers, which rested on a theory of recklessness. The Commonwealth has acknowledged that it failed to prove beyond a reasonable doubt that the officer received more than a trifling or transient injury.  See Commonwealth v. Burno, 396 Mass. 622, 626-627 (1986).

duty floor jack."[3] In addition, one of the vehicles had a screwdriver jammed into the lock on the driver's side door, and there were several loose lug nuts on the ground around the cars.

The officer announced himself as a police officer, approached the defendant while pointing his gun, and instructed the defendant to get down on the ground. Instead, the defendant fled, running across the car lot to an area with briars, and then into the woods. As the officer gave chase, a white U-Haul van came from around the back of the dealership and sped out of the lot. The officer called for a K-9 officer to help locate the defendant.

A K-9 officer who happened to be in the area saw a white van driving erratically and enter the highway going in the wrong direction at almost the same time as he received the call to respond to the dealership. The K-9 officer decided not to follow the van given the danger involved in chasing a vehicle going the wrong direction on a highway, and instead went to the dealership.

The two officers then went into the woods where the defendant had entered, and the police dog picked up a human

---

[3] An employee of the dealership testified that replacing a smashed window would cost about $500 between parts and labor, replacing a set of regular lug nuts would be about $5 to $10 dollars, and replacing a set of locking lug nuts would be between $75 and $80 dollars.

scent. The K-9 officer announced repeatedly and loudly that they were the police, that they had a police dog, and that the dog would bite if the defendant did not reveal himself first. This is what, in fact, transpired because the defendant did not emerge from his hiding spot. The dog located the defendant, bit him, and hung on, as trained. The defendant repeatedly struck the officers and the dog, and continued to do so even after he had been instructed to stop. Ultimately, the defendant stopped fighting only when he was sprayed with mace or pepper spray and, at that point, the police dog released him.

The next day, police found the white van, which had been stolen from a U-Haul dealer. The defendant's cousin was the driver of the van, and inside was a wheel with a tire and a global positioning system (GPS) unit that had been taken from a vehicle at the dealership.

The defendant testified in his own defense, essentially claiming that his cousin had taken him to the dealership without any explanation, and that he had remained in the van while his cousin had gone into the dealership lot. Notably, the defendant's testimony corroborated significant portions of the Commonwealth's case, such as that he was at the dealership on the night in question with his cousin, that his cousin had picked him up in a U-Haul van, that he heard a banging noise while at the dealership, that he saw his cousin "jacking" one of

4

the cars, that he (the defendant) threw some lug nuts into the woods, and that he ran into the woods, where he eventually was located by a police dog and two officers.

Discussion.  Sufficiency of the evidence.  "When reviewing a motion for a required finding of not guilty, the 'question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Grassie, 476 Mass. 202, 207 (2017), S.C. 482 Mass. 1017 (2019), quoting Latimore, 378 Mass. at 677.  "Proof of the essential elements of the crime may be based on reasonable inferences drawn from the evidence, . . . and the inferences a jury may draw need only be reasonable and possible and need not be necessary or inescapable." Commonwealth v. Kapaia, 490 Mass. 787, 791 (2022), quoting Commonwealth v. West, 487 Mass. 794, 800 (2021).  "[I]n order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime." Cramer v. Commonwealth, 419 Mass. 106, 112 (1994), quoting Commonwealth v. Fancy, 349 Mass. 196, 200 (1965).  "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding." Commonwealth v. Norris, 483 Mass. 681, 685

(2019), quoting Commonwealth v. Brown, 401 Mass. 745, 747 (1988).

> "Because the defendant moved for required findings at the close of the Commonwealth's case and again at the close of all the evidence, [w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time. We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case" (quotation omitted).

West, 487 Mass. at 799-800, quoting Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006). "Deterioration occurs 'not because the defendant contradicted the Commonwealth's evidence . . . but because evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect.'" Commonwealth v. Merry, 453 Mass. 653, 663 (2009), quoting O'Laughlin, supra at 203.

As to the breaking and entering charge,[4] the defendant argues that the evidence was insufficient to permit the jury to

---

[4] To prove the defendant guilty of breaking and entering a vehicle during the nighttime,

> "the Commonwealth must prove four things beyond a reasonable doubt: [1] [t]hat the defendant broke into a [vehicle] belonging to another person; [2] [t]hat the defendant entered that [vehicle]; [3] [t]hat the defendant did so with the intent to commit a felony in that [vehicle]; and [4] [t]hat this event took place during the nighttime."

8.100 Model Jury Instructions for Use in the District Court (2009). "A defendant's intent to commit a felonious larceny may be proved in a number of ways." Commonwealth v. Hill, 57 Mass.

find that he was the person who broke into and damaged the vehicles, or that he had stolen anything.  Although it is true that no one testified that they saw the defendant break into the cars, direct testimony was not required.  The defendant's proximity to the damaged cars, in the middle of the night, with lug nuts in his hand, while one car was still jacked up, was enough to permit the jury to infer that he was the person who had damaged the cars with the intent to steal GPS equipment, and that he had removed lug nuts in order to steal tires.  These inferences were buttressed by the fact that the GPS unit located in the van driven by the defendant's cousin, contemporaneously present on the scene on the same night, had been stolen from a car at the dealership.

As to the charges of malicious destruction of property with a value over $250,[5] attempt to commit the crime of larceny over

---

App. Ct. 240, 247 (2003).  See Commonwealth v. Lauzier, 53 Mass. App. Ct. 626, 629 (2002) ("intent may be inferred from the actual commission of the felonious act . . . as well as from the circumstances attending the act" [quotation omitted]).

[5] As the Supreme Judicial Court explained:

"The felony offense of malicious destruction of property valued at over $250 has four essential elements, which must be proved beyond a reasonable doubt:  the defendant injured or destroyed the personal property . . . of another; the defendant did so willfully; the defendant did so with malice; the value of the property so injured or destroyed exceeded $250."

$250,[6] and larceny under $250, the defendant similarly argues

that the absence of direct evidence that he was the person who

destroyed the cars, or that they had been destroyed on the night

in question (as opposed to some earlier date), or that he took

or carried anything away, required a finding in his favor.  For

the same reasons we have set out above, the defendant's argument

fails to persuade us.  The jury could use its common sense to

infer from the defendant's presence in the lot of a closed

dealership, in the middle of the night, while a repeated

metallic banging occurred, with lug nuts in his hand, standing

next to cars whose windows had been smashed, one having a

screwdriver jammed into the lock, that he had caused the

destruction to the vehicles on that evening, that he was

attempting to steal wheels or tires, and that he had, in fact,

---

Commonwealth v. DeBerry, 441 Mass. 211, 215 n.7 (2004).  "Where
repairable damage or destruction is caused to a portion or
portions of a greater whole, the value of the property damaged
or destroyed is to be measured by the reasonable cost of the
repairs necessitated by the malicious conduct."  Id. at 221-222,
quoting Nichols v. United States, 343 A.2d 336, 342 (D.C. 1975).

[6] "The crime of attempt consists of the intent to commit the
underlying crime coupled with an overt act."  Commonwealth v.
Green, 66 Mass. App. Ct. 901, 903 (2006), quoting Commonwealth
v. Horton, 434 Mass. 823, 836 (2001).  "Larceny is the taking
without right of the personal property of another with the
specific intent to deprive the other of the property
permanently."  Commonwealth v. Murray, 401 Mass. 771, 772
(1988).

caused the GPS unit located in the van to be taken and carried away.

As to the charge of resisting arrest,[7] the defendant points to his own testimony to argue that he merely struggled with the police dog and does not remember having physical contact with the officers. But our task here is to view the evidence under the familiar Latimore standard. Taken in that light, the evidence permitted the jury to find that the defendant repeatedly struck the officers, despite being told to stop resisting arrest.

Closing. During closing argument, the prosecutor stated that "[t]he defendant was caught red-handed at the . . . dealership in the process of stealing tires." The defendant

_____

[7] Pursuant to G. L. c. 268, § 32B (a),

> "A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."

"Fleeing from, or even resisting, a stop or patfrisk does not constitute the crime of resisting arrest." Commonwealth v. Grant, 71 Mass. App. Ct. 205, 209 (2008). Officers intending to effect an arrest must "objectively communicate[] that intention to the defendant prior to, or during, the pursuit" in order "to satisfy the requirement that a defendant understand he is being arrested." Id. at 209-210.

9

lodged a timely objection on the ground that the evidence merely showed that the defendant was observed holding lug nuts in his hand, not that he was observed stealing tires. Because the defendant timely objected, we review to determine whether there was error and, if so, whether the error was prejudicial, "i.e., 'whether we can say with fair assurance that the error did not influence the jury, or had but very slight effect'" (quotation omitted). Commonwealth v. Correia, 65 Mass. App. Ct. 27, 31 n.4 (2005), quoting Commonwealth v. McCoy, 59 Mass. App. Ct. 284, 290 (2003).

The prosecutor did not stray beyond the permissible bounds of argument. As we have already noted, the evidence easily permitted the jury to infer from the fact that the defendant had lug nuts in his hand while standing next to a jacked-up car in the middle of the night in the lot of a closed dealership, that he was in the process of stealing tires. Prosecutors may argue "forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence." Commonwealth v. Carriere, 470 Mass. 1, 19 (2014), quoting Commonwealth v. Kozec, 399 Mass. 514, 516 (1987). Arguments "ask[ing] the jury to draw an inference that was 'reasonable and possible'" are not erroneous even if the inference does not "flow[] inevitably from the evidence." Commonwealth v.

Mazariego, 474 Mass. 42, 58 (2016), quoting Commonwealth v. Marquetty, 416 Mass. 445, 452 (1993).

Conclusion.  On count six of the complaint charging assault and battery on a police officer, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.  The remaining judgments are affirmed.

So ordered.

By the Court (Green, C.J.,
  Wolohojian &
  Sullivan, JJ.[8]),

*Joseph F. Stanton*

Clerk

Entered:  June 2, 2023.

---

[8] The panelists are listed in order of seniority.

11