COMMONWEALTH *vs.* GARY E. LAVIN.

No. 96-P-270.

Middlesex. January 15, 1997. - May 27, 1997.

Present: SMITH, GREENBERG, & FLANNERY, JJ.

*Practice, Criminal,* Agreement between prosecutor and defendant.

At the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, the prosecutor's violation of a pretrial agreement not to introduce certain evidence by eliciting the evidence and then arguing it to the jury, destroying defense counsel's strategy and seriously undermining the credibility of a key defense witness, so prejudiced the defendant that a new trial was required. [713-715]

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on June 7, 1995.

The case was tried in the jury session of that division before *Robert V. Greco,* J.

*Arthur M. Pearlman* for the defendant.

*Geraldine C. Griffin,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Gary E. Lavin, the defendant, spent most of the afternoon of June 6, 1995, at the Dramatic Club in Framingham with some friends and his father, Edward Lavin, the club's manager. Upon receiving a telephone call from his girlfriend at around 8:45 P.M., the defendant left the club and drove to a house on Benson Avenue, a short distance away. There an argument ensued between the defendant and his girlfriend. She needed drugs and the defendant refused to help. Their altercation expanded into public view when she fled the house and ran down the street toward the club, with the defendant in pursuit. The chase ended about fifteen minutes later when the defendant's girlfriend ran back home again and took refuge in the cellar. Someone called the Fram-

ingham police for pacification. A police officer responding to the call passed the defendant driving away in the opposite direction. The defendant stopped his car, turned around and pulled behind the police cruiser. He got out of his car and began shouting at several people who had emerged from inside the house. A second police officer arrived, and together the two officers tried unsuccessfully to calm the defendant. Suspecting the defendant had been drinking, the officers asked him some questions and administered field sobriety tests, which the defendant did not perform to their satisfaction. The officers arrested the defendant and charged him with operating a motor vehicle while under the influence of intoxicating liquor (G. L. c. 90, § 24[1][*a*][1]). As they were preparing to leave for the police station, the defendant's father arrived on the scene. After a brief protest and argument by the father, the police arrested him as well.[1]

At trial before a jury of six in the Framingham District Court, the defendant brought an oral motion in limine to exclude evidence of his father's arrest. In an unrecorded lobby conference, the prosecutor agreed not to introduce evidence of the defendant's father's arrest as long as defense counsel refrained from questioning the father about what occurred in front of the house. With that assurance, defense counsel withdrew his motion.

As expected, the defendant's father appeared as a witness on his son's behalf. He testified that the defendant was at the club for several hours before the telephone call, and had been served only one alcoholic beverage. Defense counsel carefully and deliberately confined his direct examination of the father to events preceding his arrival at the house.

On cross-examination, the prosecutor accused the defendant's father of being intoxicated on the evening in question. The witness denied the accusation. Defense counsel let the matter rest, asking nothing more about the father's sobriety. After the defendant completed his case, the prosecutor called Joseph Besardi, one of the arresting officers, to rebut the defendant's father's testimony that he was not intoxicated. The following exchange occurred:

---

[1]The record indicates only that the defendant's father may have been intoxicated and that he had walked to Benson Avenue. It is unclear on what charge he was arrested.

PROSECUTOR: "And can you describe for the jury what condition [the defendant's father] was in that evening?"

WITNESS: "He was extremely intoxicated. He was boisterous, he was arrogant, he pushed his way into the scene when we were speaking to his son. He was told several times to step back. He finally pushed his way into the scene again, raised his hands, and came towards me. *He was placed under arrest. . .*" (emphasis added).

Upon completion of the rebuttal testimony, defense counsel, no doubt alarmed at Besardi's breach of the agreement, requested a bench conference. The judge allowed the officer's testimony to stand. The jury ultimately returned a verdict of guilty.

Relying on *Commonwealth* v. *Felton*, 16 Mass. App. Ct. 63, 66 (1983), the defendant argues that even if the testimony about his father's state of sobriety was otherwise admissible, Officer Besardi's revelation of the ensuing arrest violated the agreement of the prosecutor that he would not introduce evidence of the father's arrest unless defense counsel dealt with what happened in front of the house during his direct examination.

In *Felton*, the prosecutor, at an unrecorded lobby conference held prior to the presentation of the case, promised not to introduce evidence of the defendant's prior convictions. *Id*. at 64. No motion to exclude the evidence was filed at that point. Relying on this representation, defense counsel put the defendant on the stand and elicited his version of the incident. The prosecutor violated the agreement by questioning the defendant about a prior conviction, and the jury convicted. Ordering a new trial, we admonished that "[t]he Commonwealth must keep its promises." *Id*. at 66. Contrast *Commonwealth* v. *Varney*, 391 Mass. 34, 43-44 (1984) (prosecutor did not violate agreement where defendant opened up the otherwise forbidden issue).

Here the defendant argues, and we agree, that Officer Besardi's revelation to the jury of the arrest of the defendant's father not only destroyed defense counsel's strategy, but caused irreparable harm by suggesting to the jury that "the acorn does not fall far from the tree," seriously undermining the credibility of a key defense witness.

The prosecutor's attack on the father's credibility in her

final argument further exacerbated the harm associated with the introduction of the arrest evidence. She informed the jury that "[t]his case is about . . . the credibility of the witnesses who took the stand and testified under oath before you today." She asked the jury to discount the testimony of the defendant's father not only because of his relationship to the defendant, but upon scrutiny of "his forthrightness."

Prophylactic considerations assume importance in fashioning a remedy for deliberate violations of pretrial agreements in a criminal case. It is well settled that where a defendant relies on the promise made by a prosecuting attorney, the court will enforce the promise because the "public faith which has been pledged" by such officers must be "duly kept." *Commonwealth* v. *Benton*, 356 Mass. 447, 448 (1969). See to the same effect *Commonwealth* v. *Michel*, 381 Mass. 447, 450 n.4 (1980); *Commonwealth* v. *Tirrell*, 382 Mass. 502, 512 (1981).

We do not have the benefit of what was said to Officer Besardi after the judge approved the agreement excluding the "arrest" testimony. It is true, as the Commonwealth argues, that the phrasing of the prosecutor's question did not suggest the inappropriate response given by Officer Besardi. However, it may be that the only way to prevent deliberate violations of such agreements or pretrial rulings is to formulate a per se rule which would equally bind the prosecutor, as well as any witness for the prosecution, to the agreement.[2] This formulation would place the burden on the prosecutor to advise witnesses, on the record, as to the permissible nature and scope of their testimony.

In the instant case, we find it unnecessary to adopt such a rule because the rebuttal testimony of Besardi unfairly

---

[2]Though not as a per se matter, Massachusetts courts have held prosecutors accountable for the errors of police officers. See *Commonwealth* v. *Manning*, 373 Mass. 438, 442 n.5 (1977) (as "prime mover" behind indictment, arresting officer must be considered part of prosecution team); *Commonwealth* v. *St. Germain*, 381 Mass. 256, 261 n.8 (1980) ("the police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of [delayed disclosure of exculpatory evidence]") (citations omitted); *Commonwealth* v. *Redding*, 382 Mass. 154, 157 (1980) (same); *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 311 (1984) ("inept and 'bungling' performance of the police" is attributed to prosecution). Contrast *Commonwealth* v. *Waters*, 410 Mass. 224, 229 (1991) (actions of police officers not attributable to prosecution where such actions not taken in furtherance of law enforcement, but as part of unlawful scheme).

prejudiced the defendant. This is particularly true where, as here, credibility was a major issue, with the defendant attempting to show through his witnesses (notably the father) that he had consumed only modest quantities of alcohol.

*Judgment reversed.*

*Verdict set aside.*