NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-684

COMMONWEALTH

vs.

SOI KET DANG.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Soi Ket Dang, was indicted for murder in the first degree in connection with the stabbing death of Marissa Randall. Following a jury trial in the Superior Court, the defendant was found guilty of murder in the second degree. Following a nonevidentiary hearing, a second judge (motion judge) denied the defendant's motion for a new trial. In this consolidated appeal, the defendant argues that 1) the motion judge erred in denying his motion for new trial based on ineffective assistance of counsel, 2) the trial judge erred in admitting a video recording depicting Randall performing a sex act on the defendant, 3) the evidence was insufficient to prove the absence of heat of passion induced by sudden combat, and 4) cumulative errors and the Commonwealth's closing argument denied him a fair trial. We affirm.

Background. We summarize the facts that the jury could have found while reserving certain facts for later discussion. The defendant first met Randall when he initiated contact with her online. On November 10, 2015, they met in person. In exchange for sex, the defendant gave Randall a tattoo and approximately $120. Less than a week later, on November 16, 2015, the defendant contacted Randall via text message and offered to pay her $350 in exchange for one hour of her time. The defendant later changed the arrangement to $350 for thirty-five minutes; Randall ultimately agreed.

The defendant picked up Randall and took her to his apartment. Randall asked the defendant if he wanted to make a video recording of her performing oral sex on him; she planned to sell the video recording for $100. The defendant agreed. After they made the video recording and had sex again, the pair argued over the amount of money that the defendant owed Randall. Ultimately the defendant fatally stabbed Randall with a large knife approximately twenty times.

The defendant went to work the next day, leaving Randall's body in his apartment. While at work, the defendant was contacted via text message by S.W., a young woman he knew from a website. S.W. asked to stay with the defendant. He agreed, but said that he was "uncomfortable bringing [her] back to his house because he had done something bad," eventually admitting to S.W.

2

that he killed Randall.  Nevertheless, S.W. accompanied the defendant to his apartment.  During this time Halifax police were looking for S.W.  They "pinged" her location from her tablet and found her at the defendant's apartment.  The police eventually discovered Randall's body in a partially opened closet, wrapped in a rug.

The defendant was handcuffed, provided his Miranda rights, and brought to the police station, where he made a statement.  A redacted version of the recorded statement was admitted at trial.  The defendant told investigators that a prostitute that he met online was in the rolled up rug.  He said that they argued over money, Randall became upset, and said that she needed to get home.  The defendant felt that Randall was "wasting time" making the video recording, and he became frustrated because she was "rush[ing] [him]."  He then offered to give Randall "$80 or $60" rather than the previously agreed amount of $350.  He said that they continued to argue, and Randall pushed him because "she wanted [him] to pay her."  He eventually placed Randall in a headlock; she "tr[ied] to get away from [him]" by elbowing him.  The defendant said that Randall "[was] screaming 'stop' and 'why are you doing this.'" He then grabbed a knife, and stabbed Randall.  Once he realized that he had killed her, the defendant wrapped Randall's body in plastic tablecloths, zip tied her legs, and dragged her body

3

into a closet.  When asked, the defendant said that the knife was in a bucket next to the refrigerator.  The defendant had some rug burns, but did not mention any other injuries, nor did the police observe any.

Investigators executed a search warrant on the defendant's apartment and car.  Among other things, they found a knife that was later determined to have Randall's deoxyribonucleic acid on it, a Samsung phone, and a ZTE phone.  The video recording of Randall performing oral sex on the defendant was found on the ZTE phone along with text messages between the two.

The defendant's theory at trial was that he stabbed Randall in self-defense.  He testified that when Randall first arrived at his apartment, she seemed "happy because [he] said yes to helping her make the video."  According to the defendant, after making the video recording and having sex, they argued over money.  The defendant claimed that Randall was going through his personal belongings and demanding money, although he did not tell investigators that when he gave his statement.  The defendant testified that Randall initiated the confrontation by shoving him, which prompted him to restrain her in a bear hug, although he stated that he did not have concerns about his safety at this point.

For the first time at trial the defendant claimed that Randall picked up a screwdriver and "jabbed" him on his right

4

knee with it.[1]  He then ran and grabbed a knife, pulled it out of its sheath, and "waved it in front of [Randall] . . . doing [a] slashing motion in the air."  He said Randall came at him with the screwdriver and "advanced and then retreat[ed]."  Because Randall "got so close," the defendant ran, grabbed her, placed her in a second bear hug, and repeatedly stabbed her because she kept coming at him.  The defendant said that he held Randall down with the weight of his body while he strangled her to keep the neighbors from hearing her screams.

The defendant called Dr. Carl Dahlberg, an emergency room physician who had reviewed Randall's toxicology report, as a witness.  Dahlberg confirmed that amphetamines and marijuana were present in Randall's system, that the level of amphetamines was "pretty high," and that they can produce restlessness, agitation, mania, impulsiveness, and psychosis.

Discussion.  1.  Ineffective assistance of counsel.  The defendant contends that the motion judge erred in denying his motion for new trial based on claims of ineffective assistance of counsel on two grounds:  failing to move for a mistrial, and failing to timely investigate an abuse prevention order issued

_____

[1] During execution of the search warrant, investigators did not recover a screwdriver in the defendant's apartment.  They did find screwdrivers in the defendant's car, although none had visible stains on them.

5

pursuant to G. L. c. 209A (209A order) taken out by Randall's former boyfriend on behalf of their infant son.

We review the denial of a motion for new trial "only to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Duguay, 492 Mass. 520, 531 (2023), quoting Commonwealth v. Sanchez, 485 Mass. 491, 498 (2020). To prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's representation fell "measurably below that which might be expected from an ordinary fallible lawyer," and that the defendant was "likely deprived . . . of an otherwise available, substantial ground of defence" as a result. Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "If a defendant challenges the 'tactical or strategic decisions[]' of trial counsel, he must establish them as 'manifestly unreasonable.'" Commonwealth v. Shanley, 455 Mass. 752, 768 (2010), quoting Commonwealth v. Montanez, 410 Mass. 290, 295 (1991). As is the case here, where "the motion judge did not preside at the trial, we defer only to the trial judge's credibility determinations and 'regard ourselves in as good a position as the motion judge to assess the trial record.'" Commonwealth v. Wilson, 486 Mass. 328, 334 (2020), quoting Commonwealth v. Wright, 469 Mass. 447, 461 (2014).

6

a. Failure to move for a mistrial. The defendant contends that trial counsel was ineffective because he did not move for a mistrial based on a police officer's unsolicited testimony that S.W. reported to police that she was "drugged and forced to have sex." Prior to trial, in response to the defendant's motion in limine, the prosecutor made a proffer of S.W.'s anticipated testimony. The trial judge permitted S.W. to testify but ruled that any reference to child exploitation and S.W.'s age were excluded. Thereafter S.W. testified consistent with the trial judge's ruling. However, a police officer provided unsolicited testimony that S.W. reported "she was drugged and forced to have sex," which the prosecutor promptly interrupted.[2] The defendant

---

[2] Specifically, the defendant pointed to this exchange:

"Q. Did you tell the defendant what statements [S.W.] had made --

"A. Yes.

"Q. -- regarding an individual in his home?

"A. Yes.

"Q. And what were those statements specifically about that individual?

"A. The statements that were made [S.W.] passed on was that she was drugged and forced to have sex --

"Q. Not about her, just about the individual, the separate individual in the home."

7

only challenges trial counsel's failure to move for a mistrial, not his failure to object in front of the jury.

Trial counsel submitted an affidavit in connection with the motion for new trial where he averred that he did not move to strike this testimony in open court, instead intending to move for a mistrial at sidebar, so as to not call more attention to this statement. See Commonwealth v. Haley, 413 Mass. 770, 778 (1992). Trial counsel did not so move, and his affidavit did not explain this inaction.[3] We note that the testimony from the police officer was brief and unsolicited. It was nonresponsive to the question asked, was promptly cut off by the prosecutor, and was not repeated at any point during the remainder of the trial.[4] As the motion judge observed, "when the jury have been exposed to inadmissible evidence in violation of a court order, the judge may rely on a curative instruction to remedy any prejudice." Therefore, had trial counsel requested a mistrial,

---

[3] The affidavit stated that he "[did] not recall if [he] moved for a mistrial as a result of that testimony, but [he] d[id] not know of any reason why [he] would not have, and [he] would expect that [he] so moved at sidebar at the earliest occasion."

[4] The defendant's reliance on Commonwealth v. Lavin, 42 Mass. App. Ct. 711 (1997), is misplaced. In Lavin, we held that a defendant was prejudiced by testimony of a prosecution witness in violation of an agreement between the prosecutor and the defense attorney when the testimony "destroyed defense counsel's strategy . . . [and] seriously [undermined] the credibility of a key defense witness" because the police officer stated that the witness was arrested as part of the same incident at issue in the case. Id. at 713. The passing, nonspecific reference to S.W.'s statement did not undermine the defendant's testimony.

the trial judge likely would have denied the motion and opted to give the jury a curative instruction instead.  See Commonwealth v. Paige, 488 Mass. 677, 684 (2021).  In fact, the trial judge did precisely that in connection with other testimony from this same witness.

From this we conclude that a request for a mistrial was likely to fail, and therefore trial counsel was not ineffective for failing to move for one.  See Commonwealth v. Conceicao, 388 Mass. 255, 264 (1983) ("It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success").  Moreover, the defendant has failed to show that "better work might have accomplished something material for the defense."  Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977).

b.  Failure to investigate.  The defendant next argues that trial counsel was ineffective for failing to investigate a 209A order obtained by Randall's former boyfriend (on behalf of their infant son) that issued against Randall as potential Adjutant evidence.[5]  The affidavit submitted in support of the 209A order claimed that Randall "threatened to take her life and the life

_____

[5] "[W]here a claim of self-defense has been asserted and the identity of the first aggressor is in dispute . . . trial judges have the discretion to admit in evidence specific incidents of violence that the victim is reasonably alleged to have initiated."  Commonwealth v. Adjutant, 443 Mass. 649, 650 (2005).

9

of [her] son."  Trial counsel raised this issue for the first time on the third day of trial.  He advised the judge that he did not believe the 209A order qualified as Adjutant evidence because it involved "just threats," and that he sought to use the 209A order as impeachment evidence.

After initially stating that the 209A order was "backdoor Adjutant material" and therefore inadmissible,[6] the trial judge revisited his ruling and admitted the 209A order and supporting affidavit for the limited purpose of impeaching Randall's mother.  The 209A order was admitted and the jury were provided a limiting instruction as to its use.  The judge denied trial counsel's request to admit the 209A order substantively.

The defendant contends that trial counsel was ineffective for failing to timely locate and produce evidence contained within the 209A order prior to trial to support his claim of self-defense.  Trial counsel's affidavit set forth the steps he took to obtain the 209A order and his efforts to summons Randall's former boyfriend as a witness.[7]  In concluding that trial counsel was not ineffective, the motion judge noted that a

---

[6] The trial judge stated that he would have admitted the 209A order as Adjutant evidence if the defense had provided proper notice.  The judge's "thinking out loud" and "musings" from the bench are not a final ruling.  Commonwealth v. Spencer, 465 Mass. 32, 45 & n.18 (2013).

[7] This included hiring an investigator to locate Randall's former boyfriend and securing a court order to obtain the 209A order.

10

threat of future violence, without evidence of follow through, is not probative of the first aggressor issue of self-defense. See Commonwealth v. Deconinck, 480 Mass. 254, 267 (2018) (victim's threats to girlfriend in violation of restraining order not Adjutant evidence where threats were different in nature from violence at issue, and no evidence victim followed through on threats). The judge further concluded that, even if the 209A order qualified as Adjutant evidence, the defendant could not establish prejudice under the second prong of Saferian, 366 Mass. at 96. We agree.

Moreover, the fact that Randall threatened to kill herself and her infant some twelve days before her murder, and did not act on it, would not likely have affected the jury's deliberations as it went to a collateral issue, and thus the defendant has failed to show "that better work might have accomplished something material for the defense." Satterfield, 373 Mass. at 115. In any event, the 209A order was admitted to impeach Randall's mother's testimony about her daughter's general "bubbly" disposition and demeanor. Because the 209A order was not probative of the issue of the first aggressor, its exclusion as Adjutant evidence did not "[deprive] the defendant of an otherwise available, substantial ground of defence."

11

Commonwealth v. Souza, 492 Mass 615, 636 (2023) (quotation omitted).[8]

2. Admission of video recording. The defendant next argues that the trial judge abused his discretion by admitting the video recording depicting Randall performing oral sex on him as it constituted improper bad act evidence with minimal probative value and was "severely prejudicial." In general, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Mass. G. Evid. § 403 (2023). See Commonwealth v. Bell, 473 Mass. 131, 144 (2015), cert. denied, 579 U.S. 906 (2016). "Determinations whether proffered evidence is more prejudicial than probative are entrusted to the trial judge's broad discretion and are not disturbed absent palpable error." Commonwealth v. Spencer, 465 Mass. 32, 52 (2013) (quotation omitted).

Here, the video recording depicted acts that were inextricably intertwined with the description of the events of

---

[8] For the first time on appeal, the defendant contends that had his trial attorney timely investigated the 209A order, he would have discovered out of state records relating to Randall. He did not, however, include this claim in his motion for a new trial and does not identify what evidence would be gleaned from these records. Accordingly, this claim does not rise to the level of appellate argument, see Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), and is waived, see Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501 (2001).

the night of the killing as it unfolded, and thus was part of the "full picture of the events surrounding the crime." Commonwealth v. Bryant, 482 Mass. 731, 736 (2019). It was "part of the movie unfolding during the time leading up to" and immediately preceding the killing. Commonwealth v. Robidoux, 450 Mass. 144, 159 (2007). Indeed, the argument over payment began after the defendant and Randall made the video recording.

The video recording was also properly admitted to rebut the defendant's claim of self-defense, see Commonwealth v. Anestal, 463 Mass. 655, 665 (2012), and was probative of the defendant's motive to kill Randall and of his state of mind. See Commonwealth v. Oberle, 476 Mass. 539, 551 (2017). It was also probative of Randall's state of mind and disposition prior to her death. Commonwealth v. Jaime, 433 Mass. 575, 579 (2001). This is particularly so where the defendant called an expert witness who testified that the high levels of amphetamines in Randall's system could produce "mania or even psychosis," consistent with his claim that she was the first aggressor and that he acted in self-defense because she came at him with a screwdriver. The video recording, which was made nearly contemporaneously with the killing, depicted Randall in a calm and unagitated state thereby rebutting the defendant's contentions at trial. See Commonwealth v. Howard, 479 Mass. 52,

13

67 (2018) (prior bad act evidence admissible to rebut defendant's contentions made in course of trial).[9]

Furthermore, the judge took steps to minimize the prejudicial effect of the video recording by ordering redactions of it, asking potential jurors about their ability to be impartial when viewing graphic evidence of sexual activity, and by providing a limiting instruction contemporaneously with the showing of the video recording and again in his final charge to the jury.[10] We therefore conclude that the judge did not abuse his discretion in admitting the video recording and took appropriate steps to mitigate any prejudicial effect. See Commonwealth v. Alleyne, 474 Mass. 771, 780 (2016), quoting Commonwealth v. Amran, 471 Mass. 354, 358 (2015) ("judge may mitigate prejudice" by "alerting the venire" that graphic evidence might be shown, asking potential jurors about potential difficulty with evidence, and "by instructing the jury that they should not be swayed by emotion").

3. Sufficiency of the evidence. The defendant next argues that there was insufficient evidence to warrant a conviction of

---

[9] In addition, the prosecutor limited references to the video recording in closing argument and discussed it in a "technical, analytical manner, without drama or undue emphasis that might have released its potential for unfair prejudice." Commonwealth v. Veiovis, 477 Mass. 472, 487 (2017) (quotation omitted).
[10] Trial counsel did not object to the limiting instructions, and the defendant does not raise their sufficiency on appeal.

murder in the second degree because the Commonwealth did not meet its burden to show the absence of heat of passion induced by sudden combat.  As a result, he argues that his murder conviction must be reversed or reduced to a conviction of voluntary manslaughter.[11]  In a murder case, if "evidence has raised the possibility of provocation and voluntary manslaughter may be at issue," the Commonwealth is required to prove the absence of provocation.  Commonwealth v. Whitman, 430 Mass. 746, 751-752 (2000).  "The mitigating circumstance of sudden combat contemplates a scenario in which two meet, not intending to quarrel, and angry words suddenly arise, and a conflict springs up in which blows are given on both sides, without much regard to who is the assailant."  Commonwealth v. Grassie, 476 Mass. 202, 209 (2017), S.C., 482 Mass. 1017 (2019) (quotation omitted).  In reviewing a claim of insufficient evidence, we evaluate whether, when viewed in the light most favorable to the Commonwealth, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

---

[11] "Voluntary manslaughter is an unlawful killing arising not from malice, but from . . . sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense" (quotation omitted).  Commonwealth v. Yat Fung Ng, 489 Mass. 242, 257 (2022).

According to the defendant, the only evidence as to how the altercation began was that Randall "shoved" him during an argument over payment for sex, but the jury were not required to credit this testimony. See Commonwealth v. Gomez, 450 Mass. 704, 710-711 (2008). He posits that there was insufficient evidence for the jury to convict him of murder in the second degree where the evidence with regard to heat of passion as a result of sudden combat was not "of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." Latimore, 378 Mass. at 677 (quotation omitted). We are not persuaded.

Contrary to his contention, the defendant's statement that Randall pushed him is not sufficient provocation to explain stabbing Randall twenty times, and strangling her. This is particularly true where the jury could have concluded, based on the lack of injuries to the defendant, that Randall was unarmed. See Commonwealth v. Brown, 387 Mass. 220, 227 (1982) (unarmed victim choking defendant with shirt insufficient provocation to explain stabbing victim twenty-seven times). There was no evidence that the alleged "wrestling" between the two was the type of physical contact that would warrant a reasonable person to doubt that Randall presented a threat of serious harm to the defendant. See Commonwealth v. Lennon, 463 Mass. 520, 525 (2012).

16

The Commonwealth's evidence included the fact that the defendant retrieved a knife, removed it from its sheath, and repeatedly stabbed Randall twenty times -- according to the defendant -- all in response to being pushed by her.  And the defendant strangled Randall to keep her quiet when she yelled for him to stop.  While "by no means the only conclusion available to the jury," the Commonwealth presented sufficient evidence such that a reasonable jury could have found an absence of heat of passion induced by sudden combat.  See Grassie, 476 Mass. at 212 (sufficient evidence of murder even if other evidence introduced from which jury could have "embraced any of [defendant's] theories of mitigation").

Although the defendant claimed that Randall stabbed him with a screwdriver and threw items at him, the sufficiency of the Commonwealth's evidence did not deteriorate merely because the defendant presented a contrary version of critical events. See Gomez, 450 Mass. at 710-711.  The defendant's testimony did not demonstrate that the Commonwealth's proof was "incredible or conclusively incorrect."  Id. at 710 (quotation omitted). Instead, the defendant's testimony presented a credibility question for the jury to resolve.  See Commonwealth v. Ruci, 409 Mass. 94, 97 (1991).  The evidence sufficed for a conviction of murder in the second degree.

4. Cumulative errors and closing argument. Finally, the defendant argues that "the cumulative weight of these errors," in conjunction with statements made during the prosecutor's closing argument, require a new trial. As discussed supra, there were no errors by the trial judge or the motion judge that warrant a new trial.

Because trial counsel objected to two remarks in the prosecutor's closing argument, we review them for prejudicial error.[12] Commonwealth v. Lugo, 89 Mass. App. Ct. 229, 234 (2016). The defendant challenges the prosecutor's statements regarding the testimony of Randall's roommate regarding a plan to rob the defendant, and her suggestion that the jury disregard the 209A order because Randall was unable to challenge it in court. Though the prosecutor did misquote the roommate's testimony, this brief mischaracterization, which went to a collateral issue, was not prejudicial. This is particularly true where the judge gave the jury a preliminary instruction that closing arguments are not evidence, a curative instruction after the defense attorney lodged his objection, an instruction in his final charge to the jury, and gave repeated instructions that the jury's recollections of the evidence controlled. See

---

[12] The trial judge instructed the jury that closing arguments are not evidence. Trial counsel objected and asked that the judge give "specific references, and indicate that there are no basis for [the prosecutor's] claims [in closing]."

18

Commonwealth v. Thomas, 400 Mass. 676, 683 (1987) (prosecutor's "slip of the tongue" did not risk misleading jury when judge "fully instructed the jury that closing arguments are not evidence"). As further evidence that the jury were not swayed by emotion or hyperbole, the defendant was convicted of murder in the second degree (a lesser included offense of murder in the first degree) despite the brutality of the killing. Cf. Commonwealth v. Sosnowski, 43 Mass. App. Ct. 367, 372 (1997) (difficult to find prejudice where defendant acquitted of certain charges).

As to the 209A order, the prosecutor was entitled to marshal the evidence and argue reasonable inferences from it to the jury. See Commonwealth v. Carriere, 470 Mass. 1, 22 (2014). In any event, these remarks did not prejudice the defendant. They went to a collateral issue and the trial judge repeatedly instructed the jury regarding the limited purpose of the 209A

order.  Because "the jury are presumed to follow [the judge's] instructions," Commonwealth v. Gonzalez, 465 Mass. 672, 681 (2013), we discern no prejudice.

Judgment affirmed.

Order denying motion for a new trial, dated May 26, 2022, affirmed.

By the Court (Green, C.J., Blake & Henry, JJ.[13]),

Assistant Clerk

Entered:  February 7, 2024.

---

[13] The panelists are listed in order of seniority.